# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES JAMES,** | : | CIVIL ACTION |
| *Plaintiff, pro se* | : | |
| | : | NO. 24-2220 |
| **v.** | : | |
| | : | |
| **J.P. MORGAN CHASE BANK,** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                      September 2, 2025

## MEMORANDUM OPINION

Plaintiff Charles James ("Plaintiff"), proceeding *pro se*, filed this civil action averring a claim of "financial exploitation" against Defendant J.P. Morgan Chase Bank ("Defendant"). (ECF 1). Specifically, Plaintiff alleges that Defendant maliciously and unjustifiably froze his Chase Bank checking account for more than fifteen months, which caused him to suffer the loss of a business contract and relationship with a business partner, as well as emotional distress and other personal injuries.

Presently before the Court are Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a cognizable claim, (ECF 8),[1] Plaintiff's response in opposition, (ECF 14),[2] Defendant's response, (ECF 15), Plaintiff's reply, (ECF 16), Defendant's sur-response, (ECF 19), and Plaintiff's sur-reply, (ECF 22). In its motion

---

[1]  On July 7, 2024, this Court initially granted the motion to dismiss as uncontested pursuant to Local Rule 7.1(c). (ECF 9). Plaintiff filed a motion for reconsideration arguing that he had not received service of the motion. (ECF 11). By Order dated July 24, 2024, the Court granted Plaintiff's motion for reconsideration and allowed Plaintiff additional time to respond to the motion. (ECF 12).

[2]  On July 29, 2024, Plaintiff filed what is captioned a "motion" requesting the Court deny Defendant's motion to dismiss. (ECF 14). The content of Plaintiff's July 29, 2024 filing reveals it is really a *response* in opposition to Defendant's June 24, 2024 motion to dismiss, and not a standalone *motion*. Thus, the Court will treat Defendant's July 29, 2024 filing and all related pleadings accordingly (*i.e.*, as either in support or opposition to Defendant's motion to dismiss, (ECF 8)).

to dismiss, Defendant argues that the sole count in the complaint, "financial exploitation," is not a cognizable cause of action or, in the alternative, that any suit based on Defendant's actions of freezing Plaintiff's Chase Bank checking account must be brought as contract claims pursuant to the agreement Plaintiff signed when he opened his Chase Bank checking account. (ECF 8-2, the "Deposit Account Agreement"). Defendant also argues that this action is Plaintiff's attempt to circumvent this Court's May 6, 2024 Order striking Plaintiff's Second Amended Complaint in the original case against Defendant filed as Civil Action 23-cv-01918. The motion is now fully briefed and ripe for resolution. For the reasons set forth herein, the motion to dismiss is **GRANTED**, and the case is **DISMISSED**, without prejudice.

**BACKGROUND**

The following is a recitation of Plaintiff's factual allegations in the operative complaint, (ECF 1):

> Plaintiff received a $62,000 check related to a personal injury lawsuit. On April 14, 2022, Plaintiff approached his next-door neighbor, friend and business partner, John Morris Anderson ("Anderson"), seeking financial advice on opening a personal bank account to deposit the check. On Anderson's suggestion, Plaintiff decided to open a checking account and deposit the check at a Chase Bank located at 1000 S. Broad Street, Philadelphia, PA 19146.
>
> On the same day, Anderson accompanied Plaintiff to that Chase Bank to assist him in opening a checking account, and spoke on behalf of Plaintiff to a Chase Bank representative. A checking account was opened in Plaintiff's name, and the $62,000 check was deposited. At the time, Plaintiff acknowledged the terms of Chase Bank's Deposit Account Agreement ("Agreement") that would govern Plaintiff's banking relationship with Defendant. Plaintiff wrote Anderson a personal check for $7,000 to pay Anderson back for loans he had previously made to Plaintiff. Chase advised Plaintiff he would have to wait five days for the deposit.
>
> Sometime after April 14, 2022, a Chase Bank representative contacted Plaintiff and informed him that the representative had overheard Plaintiff's conversation with Anderson and that the conversation raised suspicion that Plaintiff might be falling prey to a scam. The representative informed Plaintiff that his account might be frozen due to this perceived suspicious activity. Plaintiff informed the representative that he knew and trusted Anderson. Nonetheless, when

Plaintiff called the bank back the following day, he was informed that his checking account had been frozen.  Plaintiff alleges his account was frozen in excess of fifteen months.

Plaintiff and Anderson had entered into a contract on March 7, 2022 related to the administration of a Miss Black America Pageant (the "Pageant Contract"). Plaintiff alleges that, as a result of Defendant freezing his checking account, and Plaintiff's subsequent need to request additional loans from Anderson, Anderson breached the Pageant Contract.

**LEGAL STANDARD**

Rule 12(b)(6) permits a court to grant a motion to dismiss an action if the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "Along with those facts, [a court] may also consider exhibits attached to the complaint, matters of public record, and documents integral to or explicitly relied upon in the complaint."  *Davis v. Wells Fargo*, 824 F.3d 333 351 (3d Cir. 2016).  The court must determine whether the plaintiff has pled facts sufficient to show a plausible entitlement to relief.  *Fowler*, 578 F.3d at 211.  The complaint must do more than merely allege a plaintiff's entitlement to relief — it must "show such an entitlement with its facts." *Id.* (citations omitted).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  After construing the complaint in the light most favorable to the plaintiff, if the court finds that the plaintiff could not be entitled to relief, it can dismiss the claim.  *Fowler*, 578 F.3d at 210.

When it comes to *pro se* litigants, "the federal courts employ a long-standing tradition of affording such litigants more lenient treatment when assessing their compliance with pleading and other procedural requirements," but do not excuse those requirements entirely.  *Abrams v.*

*eResearch Tech., Inc.*, 703 F. Supp. 3d 593, 600 (E.D. Pa. 2023) (citation and internal quotation marks omitted).

**DISCUSSION**

In this action,[3] Plaintiff brings a single count – financial exploitation – related to Defendant allegedly freezing the funds in his newly opened Chase Bank checking account for more than fifteen months starting around April 14, 2022. (ECF 1). Defendant seeks the dismissal of the matter because, in its view, "financial exploitation" is not a cognizable cause of action or, in the alternative, Plaintiff is precluded from bringing a claim sounding in tort when there is a controlling contract (the Deposit Account Agreement) defining the relationship between Plaintiff, Defendant, and the management of his checking account. (ECF 8; ECF 8-2). The Court need not reach Defendant's first theory – that there is *no* cognizable cause of action for financial exploitation – because it agrees with Defendant, based on the allegations in the operative complaint, that Plaintiff's opening a Chase Bank checking account and agreeing to the terms of the Deposit Account Agreement precludes Plaintiff's tort claim.

Plaintiff's sole cause of action as pled is precluded by the gist of the action doctrine. Pennsylvania courts have laid down a marker creating a "conceptual distinction between breach of contract claims and tort claims," which "preclude[es] plaintiffs from recasting ordinary breach of contract claims into tort claims." *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 385–86 (3d Cir. 2004) (citing *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)); *see also Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103 (3d Cir. 2001);

---

[3]  In addition to this action, Plaintiff has filed three other lawsuits in this Court against Defendant related to the same conduct – the alleged freezing of his Chase Bank checking account around April 14, 2022, (*see* Case Nos. 23-cv-1918, 24-cv-4656, and 24-cv-4631). Notably, the factual recitations underlying Plaintiff's claims in those actions are virtually identical to those here.

*Owen J. Roberts School Dist. v. HTE, Inc.*, 2003 WL 735098, at *2 (E.D. Pa. Feb. 28, 2003) (explaining that application of the gist of the action doctrine means "[i]f the duty arose from the parties' agreement, then the plaintiff cannot assert a tort claim and is limited to contractual remedies."). As one Pennsylvania court explained: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Williams*, 93 F. App'x at 386 (quoting *Bash v. Bell Telephone Co.*, 601 A.2d 825, 829 (Pa. Super. Ct.1992)); *see also Bohler-Uddeholm Am., Inc.*, 247 F.3d at 103.

Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "But where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting the motion to dismiss into one for summary judgment under Rule 56." *Id.* (citation and internal quotation marks omitted). Moreover, a court may consider a document integral to or relied upon in the complaint even where the document is attached to a defendant's motion to dismiss. *See Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530, 536 (E.D. Pa. 2019) (considering such documents when ruling on a dismissal motion). Here, Plaintiff alleges that on April 14, 2022, accompanied by Anderson, Plaintiff opened a checking account at a Chase Bank located at 1000 S. Broad Street, Philadelphia, Pennsylvania. (ECF 1 ¶¶ 4-5). It is Defendant's alleged conduct – freezing the funds in this Chase Bank checking account – that underly Plaintiff's count for "financial exploitation." *See generally id.* Accordingly, the Court finds that the Deposit Account Agreement, (ECF 8-2), which Plaintiff does not contest he agreed to upon successfully

opening the Chase Bank checking account at issue,[4] (*see* ECF 14, 16, 22), is "integral" to Plaintiff's claim and may be considered without converting the motion to dismiss to one for summary judgment. *See Owen J. Roberts Sch. Dist.*, 2003 WL 735098, at *2 (explaining that, in determining whether the gist of the action doctrine applies, "the court examines the complaint, and, if possible, the contract itself, to determine the source of the duty that the defendant allegedly breached").

In determining whether the gist of the action doctrine should apply to preclude Plaintiff's claim of financial exploitation, the decision in *Penn City Investments, Inc. v. Soltech, Inc.*, 2003 WL 22844210 (E.D. Pa. Nov. 25, 2003) is instructive. There, the court held that the gist of the action doctrine barred a fraud in the inducement claim where the defendant/counter-claimant alleged the counter-defendant had made pre-contract statements in order to induce it to enter into a contractual relationship. *Id.* at *3. The court held that the fraud in the inducement claim was barred because the "pre-contractual statements concerned specific duties that the parties later outlined in the contract." *Id.* at *4 (dismissing the tort claims because they were "directly addressed by the contract, or so closely related to the contractual relationship, that the dispute between the parties should be resolved by exclusive reference to contractual principles").

While Plaintiff has not brought a fraud in the inducement claim, his claim of financial exploitation is akin to a claim of fraud – *i.e.*, he alleges he was unlawfully separated from property, here, money, through Defendant's "exploitation." *See generally* (ECF 1). Like the fraud-based claims in *Penn City Investments, Inc.*, Plaintiff's claim that the funds he voluntarily deposited in a Chase Bank checking account were frozen by Defendant is governed by terms explicit in the

---

[4] The Court takes judicial notice that, in another matter, Plaintiff confirms that he "signed Defendant, Chase's Deposit Account Agreement" when he opened his Chase Bank checking account on April 14, 2022. *See* Case No. 24-cv-4656, (ECF No. 1 at 1). A court "may take judicial notice of public records, such as . . . court filings that are publicly filed on the docket of a district court." *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 439 n.3 (E.D. Pa. 2020).

Deposit Account Agreement, to which he agreed upon opening the account. Section IX(C) of that agreement explicitly provides the terms under which Defendant may refuse to complete a transaction involving funds or freeze the funds in Plaintiff's Chase Bank checking account. (ECF 8-2). According to the Deposit Account Agreement, among the reasons Defendant may freeze Plaintiff's account is when Defendant "suspect[s] that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction." *Id.* § IX(C).[5] Plaintiff's allegations indicate his account was frozen under such suspicion. (ECF 1 ¶¶ 7-8) (detailing how a Chase Bank representative told Plaintiff he suspected Anderson, to whom Plaintiff had written a $7,000 check upon opening the account, might be "a fraud, or a scammer," and, as a result, Plaintiff's account might be frozen).

      Accordingly, at least as to any harm resulting from Defendant taking action pursuant to the Deposit Account Agreement to freeze Plaintiff's Chase Bank checking account, those claims must be brought as contract claims because the agreement clearly and unequivocally sets forth the instances under which Defendant may deny a transaction and the circumstances under which Defendant may freeze Plaintiff's account. Thus, Plaintiff's tort-based claim of financial exploitation is improper and is dismissed.

---

[5] The Court passes no judgment on the enforceability of the Deposit Account Agreement's statement that Defendant "will have no liability for any action" related to denying a transaction or freezing the funds in Plaintiff's checking account. *See* (ECF 8-2 § IX(C)).

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**, Plaintiff's motion asking the Court to deny that motion, (ECF 14), is **DENIED**, and the case is **DISMISSED**, without prejudice.[6] An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO,* J.

---

[6] While dismissal of this action is without prejudice, this Court notes that one of Plaintiff's other active matters in this Court, Case No. 24-cv-4656, also brings a breach of contract claim against Defendant for the same alleged misconduct – Defendant's alleged freezing of Plaintiff's Chase Bank checking account around April 14, 2022.